UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jennifer Lynn,                                                Case No. 15-cv-2650

           Plaintiff

     v.                                                     MEMORANDUM OPINION

True North Management, LLC,

           Defendant

### I.     INTRODUCTION

Defendant True North Management, LLC moves to dismiss Plaintiff Jennifer Lynn's complaint pursuant to Rule 12(b)(6). (Doc. No. 7). Plaintiff filed a brief in opposition (Doc. No. 9), to which Defendant responded. (Doc. No. 10). For the reasons stated below, Defendant's motion is granted in part and denied in part.

### II.     BACKGROUND

Plaintiff Jennifer Lynn was an employee of Defendant True North Management, LLC, an employer with more than fifty employees, from 2001 to October 2014. She held the position of cashier and customer service representative. On June 18, 2014, Lynn requested Family and Medical Leave Act leave. In support of the request, Lynn submitted a Physician's Certificate citing low back syndrome, osteoarthritis of the knees, and migraines as serious medical conditions requiring occasional time off of work due to the episodic flare-ups. Lynn claims her conditions impair her ability to walk, stoop, stand, interact with others, and work. Following the request, Lynn states that she used a cane at work until she was advised by Defendant that this was not permitted. Lynn was

taken off the schedule on July 17, 2014, and was not scheduled for any other shifts until she was ultimately terminated on October 8, 2014. The time off the schedule was considered to be Lynn's twelve weeks of allotted FMLA leave. Following termination, on November 13, 2014, Lynn filed a charge of discrimination with the Equal Employment Opportunity Commission. (Doc. No. 1-1). She was granted the right to sue by the EEOC on September 23, 2015. (Doc. No. 1-2).

### III.  STANDARD

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (*citing Twombly*, 550 U.S. at

2

596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. DISCUSSION

Lynn asserts her former employer, True North, discriminated against her on the basis of disability and failed to provide her with a reasonable accommodation in violation of state and federal law. She also claims True North interfered with her FMLA rights and retaliated against her for exercising her right to take FMLA leave.

### A. Americans with Disabilities Act Violations

The Americans with Disabilities Act is intended to protect individuals with disabilities against discrimination. 42 U.S.C. §§ 12101 *et seq*. With respect to employment, the Act states "[n]o [employer] shall discriminate against a qualified individual on the basis of disability in regard to…discharge employees …and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a).

1. Disability Discrimination

When asserting a claim of disability discrimination under the ADA, a plaintiff must either provide direct evidence of discrimination based on the disability or establish a *prima facie* case through indirect evidence. *Bloomfield v. Whirlpool Corp.*, 984 F. Supp. 2d 771, 776 (N.D. Ohio 2013). A *prima facie* case of ADA disability discrimination when a plaintiff is able to prove:

> (1) he or she is disabled; (2) he or she is otherwise qualified for the position, with or without reasonable accommodation; (3) he or she suffered an adverse employment decision; (4) his or her employer knew or had reason to know of his or her disability; and (5) his or her position remained open, or he or she was replaced.

*Terry v. Chrysler Group, LLC*, 161 F. Supp. 3d 593, 599 (N.D. Ohio 2016) (quoting *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012)). *See also Bloomfield*, 984 F. Supp. 2d at 777;

*Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (overruled on other grounds).

A person is considered to be "disabled" under the ADA if she has "a physical or mental impairment that substantially limits one or more major life activit[y]," has a record of such impairment, or is regarded as such by the employer. 42 U.S.C. § 12102(1). The term "substantially limit" is intended to be interpreted liberally to provide "expansive coverage" rather than demand the impairment "prevent, or significantly or severely restrict" the activity. 29 C.F.R. § 1630.2(j)(1) (2016). In addition, even an episodic condition would fall under the definition of disability "if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii). Major life activities include "walking, standing,…interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i). Further, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

Lynn claims that she was disabled within the meaning of the ADA because of her low back syndrome, osteoarthritis of the knees, and migraines described in the Physician Certificate submitted to True North. Her ailments impaired her ability to walk, stoop, stand, interact with others, and work. Under the rules of construction and definitions articulated in the Code of Federal Regulations, the facts articulated meet the liberal standard of "substantially limits one or more life activity." Lynn is plausibly disabled; the first element is satisfied.

The second element considers whether the person is "qualified" or whether she can perform the "essential functions" of the job. 42 U.S.C. § 12111(8). The complaints state that Lynn was able to perform the "essential functions" of the job. She had the skills required to complete the tasks of a cashier and customer service representative for nearly thirteen years prior to the decline in her health. Therefore, she was arguably "qualified" for the position. Further, the fact that she was terminated satisfies the third element as an adverse employment decision. With respect to the fourth element, Lynn claims she submitted a Physician's Certificate to True North describing the

4

nature of medical conditions, which could at times require her to take time off of work. Therefore, True North plausibly knew or had reason to know of her disabling medical condition.

Lynn does not, however, state any facts to support the requirement that her position remained open or that she was replaced. She states only that her employment was terminated without any assertion that the position remained and she was excluded from it or downsizing occurred. Therefore, the fifth element is not met and Plaintiff fails to meet the standard required for a claim to withstand the motion to dismiss. The claim of disability discrimination under the ADA is dismissed without prejudice.

   2.  Failure to Accommodate

The ADA considers discrimination to include "not making reasonable accommodations to the known physical…limitations of an otherwise qualified individual…unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). The claim of failure to accommodate is very similar to that of disability discrimination, requiring the plaintiff prove:

> (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation.

*Johnson v. Cleveland City School Dist.*, 443 Fed. Appx. 974, 982-83 (6th Cir. 2011). Elements one, two, and three are identical to elements one, two, and four of the ADA disability discrimination test stated above. As discussed previously, the first three elements of this test are met.

A "reasonable accommodation" may include, among other things, modification to facilities to make them accessible, reassignment, or provision of interpreters. 42 U.S.C. § 12111(9). Likewise, a request for an accommodation may come in many forms. While in some situations, a formal request may be necessary, "a request for accommodation can be inferred by context." *Aldini v. Kroger Co. of Michigan*, 628 Fed. Appx. 347, 350-51 (6th Cir. 2015). *See, e.g., Talley v. Family Dollar Stores of*

5

*Ohio, Inc.*, 542 F.3d 1099, 1109 (6th Cir. 2008) (stating a jury could find "both written and oral" requests to "constitute[ ] a request for reasonable accommodation"); *Smith v. Henderson*, 376 F. Supp. 529, 535-36 (6th Cir. 2004) (holding a letter asking to delegate duties along with the employer's previous knowledge of disability could lead to the *inference* that it was a "request for accommodation"). Here, although no formal request appears to have occurred, Lynn asserts True North told her she could not use her cane after seeing her use the cane on the job. While this is not a request in the general sense, it is nevertheless an accommodation which was constructively requested by use and denied by the employer. As such, Plaintiff has alleged sufficient facts to plausibly assert a claim of "failure to accommodate" under the ADA.

**B. Ohio Disability Law Violations**

Ohio Revised Code Section 4112.02(A) prohibits discrimination by employers based on disability regarding "any matter directly or indirectly related to employment." Ohio disability law is very similar to federal law and, as such, courts regularly look to the ADA, as well as cases and regulations interpreting it, for guidance when analyzing state law claims. *See Wysong v. Dow Chemical Co.*, 503 F.3d 441, 450 (6th Cir. 2007); *Columbus Civil Service Comm'n v. McGlone*, 82 Ohio St. 3d 569, 573 (1998).

1. Disability Discrimination

A claim of disability discrimination under Ohio law is slightly less stringent than that under federal law. Only three elements are required: "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Wysong*, 503 F.3d at 451 (quoting *Hood v. Diamond Prods., Inc.*, 74 Ohio St. 3d 738, 741 (1996)); *see also Columbus Civil Service Comm'n*, 82 Ohio St.3d at 571.

*Columbus Civil Service Comm'n* defined the term "handicapped" similarly to "disability" under the ADA meaning, essentially, a person has an abnormal medical condition that impedes her ability

6

to "perform his everyday routine living and working." 82 Ohio St.3d at 572 (quoting 143 Ohio Laws, Part III, 4156). In addition, the Ohio Revised Code currently defines "disability" as "a physical…impairment that substantially limits one or more life activities, including...walking…and working." O.R.C. § 4112.01(A)(13). Lynn's medical conditions impair her ability to walk, stand, and work along with other essential activities of everyday life. Therefore, under Ohio law and the ADA, she is plausibly disabled or "handicapped" for the purpose of this test.

With respect to the final two elements, as asserted previously, it is possible that Lynn could perform the essential functions of her previous position. She had been working in this capacity for over a decade before her health began to interfere with her daily life and the incident at hand commenced. Therefore, she arguably had the skill required to perform as cashier and customer service representative with the use of the cane. As her employment was terminated soon after her medical conditions began to worsen, her disability could have been a contributing factor to the adverse employment decision, satisfying the second element of the test. The claim of disability discrimination under Ohio law remains.

2. Failure to Accommodate

A failure to accommodate claim under O.R.C. § 4112.02 is similar to that of general disability discrimination. In order to succeed on a claim of this nature, the plaintiff must prove: "(1) that [s]he was disabled; (2) [her] employer was aware of [her] disability; (3) [s]he was an otherwise qualified person with a disability and satisfied the prerequisites for the position, could perform the essential functions of the position with or without reasonable accommodation." *Buel v. Toledo Hosp.*, 2012 WL 6230957, at * 8 (N.D. Ohio Dec. 2, 2013); *see also Pflanz v. Cincinnati*, 149 Ohio App.3d 743, 752 (Ohio Ct. App. 2002).

As discussed previously, Lynn is arguably disabled under Ohio law. In addition, the Physician's Certificate informed True North of the nature of her medical condition, putting them on notice of her disability. Osteoarthritis of the knees could feasibly require Lynn to use a cane for

7

mobility. Finally, she had the necessary skills to perform the job for thirteen years prior to the incident at hand so it is plausible that she could continue to perform her job so long as she could use the cane. Further, interpreting Ohio disability law in light of the ADA, her failure to accommodate claim stands under both Ohio and federal law, and will not be dismissed at this time.

**C. Family and Medical Leave Act Violations**

Every eligible employee is permitted twelve weeks leave for every twelve month period of employment to be used for personal or family issues, including "a serious health condition that makes an employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Eligible employees include persons employed for at least twelve months at an employer with at least 50 employees within a 75 mile radius. 29 U.S.C. § 2611(2). A "serious health condition" is "an illness…or physical…condition that involves inpatient care…or continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11).

Here, True North is an employer within the meaning of the statute as it employs more than 50 people within a 75 mile radius. Lynn, therefore, was, at the time, an eligible employee who had been employed for more than twelve months and was entitled to take FMLA leave. Lynn submitted a Physician Certificate describing her medical conditions of low back syndrome, osteoarthritis, and migraines. The Certificate stated "she would have episodic flare-ups which would require time off from work." (Doc. No. 1 at 3)

There are two types of claims that may be asserted under the FMLA—interference or retaliation. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) Lynn alleges each in turn and requests "liquidated damages" for "willful violation of the act" causing, among other things, "mental and emotional stress." (Doc. No. 1 at 7). The Sixth Circuit held that "emotional distress damages are not allowed under the FMLA." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1008 (6th Cir. 2005); *see also Cavin v. Honda of America Mfg., Inc.*, 138 F.Supp. 2d 987, 992

8

(S.D. Ohio 2001). Therefore, the request for damages of this nature is dismissed as moved by Defendant.

1. Interference

Under 29 U.S.C. § 2615(a)(2), an employer is forbidden from interfering with an employee's right to use entitled FMLA leave time. An interference claim may be asserted by an eligible employee who was entitled to FMLA leave against an employer if the employee "gave notice of [her] intention to take leave" and the "employer denied the employee FMLA benefits to which [s]he was entitled." *Wysong*, 503 F.3d at 447 (quoting *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713,719 (6th Cir. 2003) (overruled on other grounds)); *see also Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

As previously stated, Lynn was entitled to FMLA leave. She states that she requested intermittent FMLA leave to accommodate the episodic flare-ups of her condition. The facts as stated in the complaint do not assert that True North denied Lynn FMLA leave, but instead, allege she was forced to take more leave than the intermittent leave requested. An interference claim of this nature is referred to as "involuntary leave" and occurs when an employee is physically able to work but is required to take leave by the employer. *Huffman v. Speedway LLC*, 621 Fed. Appx. 792, 797 (6th Cir. 2015); *see also Hicks v. Leroy's Jewelers, Inc.*, 2000 WL 1033029, at *4 (6th Cir. July 17, 2000). Involuntary leave claims are ripe only when an employee seeks to take FMLA leave after the full amount of leave has already been exhausted wrongfully because of the actions of the employer. *See Huffman*, 621 Fed. Appx. at 797; *Wysong*, 503 F.3d at 449.

After the twelve allotted weeks had been exhausted, Lynn did not seek to take any more FMLA leave. Instead, Lynn's employment with True North was terminated at the end of the twelve weeks FMLA leave. She does not allege that she requested more time on FMLA leave at that point. Therefore, the claim of involuntary leave is not ripe for review. The facts reveal that no FMLA

leave that was requested was denied, and as such, no grounds for recovery exist on any theory of interference under the FMLA.

2. Retaliation

An FMLA retaliation claim may be asserted under 29 U.S.C. § 2615(a)(2) (2012) when an employer acts with intent or motive to punish an employee for exercising the right to take FMLA leave. *Seeger*, 681 F.3d at 282. In order to establish a *prima facie* case of retaliatory discharge under the FMLA, the plaintiff must establish: "(1) [s]he was engaged in activity the FMLA protects; (2) the defendant knew [s]he was exercising [her] FMLA rights; (3) the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Rice v. Kellermeyer Co.*, 2014 WL 3532962, at *2 (N.D. Ohio 2014) (citing *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447 (6th Cir. 2012)).

As discussed above, Lynn was entitled to FMLA leave to accommodate her serious medical condition. By taking FMLA leave, she was engaging in protected activity. In addition, the Physician Certificate submitted to True North indicated her need to take intermittent FMLA leave. Approximately four weeks after submitting the Physician's Certificate, she was placed on FMLA leave with True North's knowledge. After twelve weeks elapsed, she was terminated from employment. Therefore, the first three elements of the *prima facie* case are established.

With respect to the fourth and final element, the Sixth Circuit has held on multiple occasions the proximity in time between the request for leave and the adverse employment decision "constitutes indirect evidence of a causal connection between [her] exercise of a right under the FMLA and the adverse employment decision." *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *see also Clark v. Walgreen Co.,* 424 Fed. Appx. 467, 473 (6th Cir. 2011) (holding termination two months after taking one month of FMLA leave was "sufficient evidence of a causal connection"). It should be noted that "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of

10

statutory leave." *Edgar*, 443 F.3d at 506-07. But, as was the case in *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007), Lynn was terminated the same day her allotted twelve weeks of FMLA leave was exhausted. The connection in time cannot merely be excused as coincidence. The claim of retaliation under the FMLA stands.

## V. Conclusion

Defendant's motion to dismiss (Doc. No. 7) is granted as to the claims of: (1) disability discrimination under the ADA; and (2) interference under the FMLA. Plaintiff's request for emotional distress damages under the FMLA is also dismissed.

The motion is denied with respect to claims of: (1) failure to accommodate under the ADA; (2) disability discrimination under ORC § 4112.02; (3) failure to accommodate under ORC § 4112.02; and (4) retaliation under the FMLA.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge